**AFFIDAVIT**

1. I, Aaron M. Lee, a Special Agent of the Federal Bureau of Investigation, Charleston, West Virginia Resident Agency, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND BACKGROUND**

2. I am a Special Agent employed by the United States Department of Justice in the Federal Bureau of Investigation ("FBI"), and as such I am a "federal law enforcement officer" within the meaning of Fed. R. Crim. P. 41(a)(2)(C) authorized to apply for federal seizure warrants.

3. I have been employed as a Special Agent of the FBI since January of 2019. I am currently assigned to the FBI Charleston Resident Agency, Charleston, West Virginia. During my employment with the FBI, I have been involved in several investigations, including investigations into complex financial crimes, possession and distribution of controlled substances, and matters of national security. As part of my duties with the FBI, I investigate violations of federal law, including offenses enumerated in Title 18 U.S.C. § 1343. I have been the affiant on search and seizure warrants, and personally participated in the execution of search and seizure warrants and making arrests.

4. Prior to working for the FBI, I was employed as a Correctional Officer in the West Virginia Division of Corrections

1

and Rehabilitation and the Federal Bureau of Prisons for more than three years. During my time as a Correctional Officer, I conducted searches for contraband and investigated violent crimes occurring within West Virginia prison facilities.

5. The facts in this affidavit come from my personal observations, my training and experience, review of relevant records, and information obtained from other investigators and witnesses.

## PURPOSE

6. This affidavit is intended to show merely that there is probable cause for the requested seizure warrant and does not set forth all of my knowledge about this matter.

7. This ongoing investigation is financial in nature. Thus, any figures I cite in this affidavit are based on calculations and tracing conducted to date and may be subject to revision at a later date.

8. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1343 have been committed by Theodore Miller ("MILLER"). There is also probable cause to seize accounts facilitating those violations and constituting proceeds of those violations.

2

9. This affidavit is made in support of an application, pursuant to 18 U.S.C. §§ 2323 and 981, for the issuance of a seizure warrant for up to $339,501.42 in total funds held at Stripe, Inc. associated with the token acct_1NB8o3B71AFrOEQ8 in the name of Bear Industries, LLC (hereinafter "**Stripe Account**").

10. The procedure by which the United States will seize the **Stripe Account** is described herein.

### PROBABLE CAUSE

11. The FBI initiated this investigation on March 14, 2023, based on a complaint it received from the West Virginia Securities Commission. The West Virginia Securities Commission reported to the FBI that MILLER was selling unregistered securities.

#### Relevant Persons and Entities

12. MILLER is a United States citizen and a permanent resident of South Charleston, Kanawha County, West Virginia, within the Southern District of West Virginia. MILLER remained outside the United States from on or about February 12, 2022, to on or about August 8, 2024.

13. Based on publicly available information, MILLER owns several businesses registered in the State of West Virginia including, but not limited to, Bear Industries LLC, a real estate

3

investment company, and T&C Construction LLC, a construction company.

14. Based on publicly available information, Bear Industries LLC is a single-member limited liability company registered in the State of West Virginia. Its sole member is MILLER. Its business address has been located in Charleston, Kanawha County, West Virginia, and Saint Albans, Kanawha County, West Virginia, within the Southern District of West Virginia.

15. Based on publicly available information, T&C Construction Services LLC is a single-member limited liability company registered in the State of West Virginia. Its sole member is MILLER. Its business address has been located in Saint Albans, Kanawha County, West Virginia, within the Southern District of West Virginia.

16. Based on publicly available information, Prestige World Wide Real Estate LLC is a single-member limited liability company registered in the State of West Virginia. Its sole member is MILLER. It was organized by MILLER and his former wife. Its business address has been located in Saint Albans, Kanawha County, West Virginia, within the Southern District of West Virginia.

17. Deanna Drumm ("Drumm") resides in South Charleston, Kanawha County, West Virginia, within the Southern District of West Virginia. Drumm was an active participant in MILLER's

4

businesses. Until recently, she held herself out as the Vice President of Bear Industries LLC. At all relevant times, Drumm regularly managed finances, signed documents, facilitated business deals and transactions, and handled business communications. Drumm acted as MILLER's agent while he remained outside of the United States.

18. Fifth Third Bancorp ("Fifth Third") is an FDIC-insured bank with branches throughout the Southern District of West Virginia, including Charleston, Kanawha County, West Virginia. Fifth Third is a financial institution as defined by 18 U.S.C. § 20.

19. Paypal, Inc. ("Paypal") is a merchant service provider payment processing platform. The company is headquartered in San Jose, California. Its servers are located outside of the State of West Virginia. Users can link their bank accounts and transfer money to another user using wire communications through the Internet.

20. Stripe, Inc. ("Stripe") is a merchant service provider payment processing platform and an electronic communication service provider and/or a remote computing service provider. Stripe has dual headquarters in San Francisco, California, and Dublin, Ireland. Its servers are located outside the State of West Virginia. Users can link their bank accounts and transfer money to

another user using a wire communication through the Internet.

### The Bear Lute Scheme

21. Beginning as early as October 2021, MILLER, aided and abetted by Drumm and other individuals both known and unknown to law enforcement, conceived and perpetrated a fraudulent scheme, the Bear Lute scheme, and other schemes, to bolster MILLER's businesses' monthly cash flow and to pay unrelated personal and professional debts, obligations, and expenses.

22. MILLER controlled a real estate investment program, "Bear Lute," which was affiliated with Bear Industries LLC. As part of Bear Lute, investors gave MILLER money to invest in real estate properties on the promise that they would achieve an extraordinary rate of return over a period of months or years. Bear Lute was administered primarily through bearlute.com.

23. MILLER promoted Bear Lute through social media, where he had amassed a large following. He regularly posted videos and other information promoting Bear Lute and directed viewers to bearlute.com.

24. As of September 10, 2024, bearlute.com contained the following representations regarding the program and MILLER, among

6

others:[1]

    a. "Our founder Teddy Miller started the company mid 2018 as a side business to create passive income in addition to his construction company and other businesses. At first he was very skeptical, and had no idea he had just created something that would eventually change his life." (https://bearlute.com/about-us/)

    b. "Bearlute is an investment product of Bear Industries designed to essentially allow everyday individuals to become the bank and lend money to Bear Industries for their real estate projects. Which consist of rebuilding abandoned and distressed properties into modern and affordable rental property that is designed to turn an incredible profit while also making a difference in the community around it." (https://bearlute.com/)

    c. "Bear Industries is a real estate development company that operates throughout the United States specialize in the rebuilding of abandoned and distressed properties into affordable, modern rental property to either be held or sold for a profit." (https://bearlute.com/about-us/)

    d. "Bear Industries has holdings in multiple locations, produces several million in annual revenue, and 20% of their current funding comes directly from investors. Who have been extremely happy with their success with this company." (https://bearlute.com/about-us/)

25. As of September 10, 2024, the "How it Works" section of bearlute.com outlined the steps for how Bear Lute functioned. (https://bearlute.com/how-it-works/):

    a. First, investors "SIGN UP AND DEPOSIT FOUNDS[.] You can choose from one of your standard investment plans or choose to invest a lump sum into your account."

    b. Second, investors "START EARNING INTEREST[.] From the

---

[1] Quotations from bearlute.com have not been altered unless noted. Typographical and grammatical mistakes are original to the websites.

moment you deposit funds into your account you will start earning 6% annum interest which will be deposited monthly into your account."

c. Third, investors "RECEIVE QUARTERLY GIFTS[.] Every 3 months you are eligible to receive a gift based on the average balance of your account and the profitability of our projects in that time."

d. Fourth, investors "REINVEST YOUR PROFITS TO MAKE MORE MONEY[.] All interest and gifts are automatically accrued and put to work making you additional profit unless you opt to receive them."



26. As of September 10, 2024, bearlute.com promised consistent standard returns, that the investment was "safe and secure," and that funds would be returned within 60 days upon request.

## EXPECTATIONS

When you Invest with Bearlute.com you are partnering with Bear Industries and Teddy Miller on their path to build a bigger empire, and with that comes some perks!

✓ CONSISTENT STADARD RETURN   ✓ MONEY IS SAFE AND SECURE   ✓ 60 DAYS RETURN OF INVESTED CASH

27. As of September 10, 2024, bearlute.com explained that after an investor invests in Bear Lute, he or she will "be given exclusive access to your investment portal" where the investor can "Track Your Deposits[;] Track Your Interest Payments[;] Track You Quarte[r]ly Gifts[;] Monitor Your Current Investment Performance[;] Monitor Your Expected Annual Return[;] Adjust your Investment Plan[;] Access Exclusive Direct Investment Opportunities for Bear Investors to Make More Money[;] And so much more!" (https://bearlute.com/exclusive-access/)



28. As of September 10, 2024, bearlute.com contained several "Sign Up" buttons that directed visitors to bearlute.com/signup.



29. Bearlute.com/signup contained the following representation: "Let's Build a Fucking Empire!!! By Signing up for BearLute.com You Are Agreeing To Essentially Become The Bank For Teddy Miller's Real Estate Development Company Bear Industries, LLC In Exchange For a Cut of His Profits From Rebuilding Properties Around The United States." Investors could choose between different investment packages and could invest money directly by using an online payment system.

10



30. As of September 10, 2024, bearlute.com's associated Terms of Service page (https://bearlute.com/terms-and-conditions-2/) provided that investors' "membership includes access to an exclusive server for you to monitor your account, adjust your monthly deposits, request a withdrawal, and see your projected annual return based on your current settings." It also provided that "Every Withdraw From BearLute.com is processed and completed within 60 days following the initial request. This is due to your funds being used in active projects, and it takes time to reallocate the cash without stalling a projects completion."

11

31. As of September 10, 2024, bearlute.com contained pictures of MILLER.



32. Upon information and belief, at all relevant times, bearlute.com maintained representations substantially similar to or the same as those noted above.

33. On September 23, 2024, the FBI seized bearlute.com pursuant to a federal seizure warrant.

**Victims E.S. & B.W.**

34. On or about August 14, 2022, victim B.W. signed up for Bear Lute after viewing bearlute.com. He began making monthly investments of $2,500, in reliance on MILLER's misrepresentations

and promises about Bear Lute, some of which appeared on bearlute.com.

35. B.W.'s deposits were deducted from his bank account in Texas, processed by Paypal, and deposited in MILLER's bank account ending in 5154 in the name of T&C Construction LLC at Fifth Third in Charleston, West Virginia, on the following dates: August 15, 2022, September 15, 2022, October 13, 2022, November 20, 2022, and December 12, 2022.

36. On or about October 12, 2022, E.S. signed up for Bear Lute after viewing bearlute.com. He made a one-time deposit of $5,000, in reliance on THEODORE MILLER's representations and promises about Bear Lute, some of which appeared on bearlute.com.

37. E.S.'s deposit was deducted from his bank account in Texas, processed by Paypal, and deposited in THEODORE MILLER's bank account ending in 5154 in the name of T&C Construction LLC at Fifth Third in Charleston, West Virginia. E.S.'s money was deducted in two $2,500 increments on or about October 13 and 14 of 2022.

38. Nearly all of MILLER's representations and promises about Bear Lute on bearlute.com were untrue.

39. Based on a review of financial records, investor funds were not pooled and deployed on real estate projects or transactions as described. Rather, as the Bear Lute funds were

available, MILLER used the funds to his and Drumm's personal benefit and to the benefit of MILLER's other businesses.

40. MILLER did not perform any cash out refinances on properties that would have generated returns in excess of 6 percent for Bear Lute investors.

41. The returns and quarterly distributions investors could view in the investor dashboard were not based on any real account figures. While the investor dashboard showed investments "growing," MILLER's businesses' total available cash was consistently decreasing.

42. MILLER did not honor withdraw requests within 60 days. Specifically, MILLER never returned B.W.'s and E.S.'s investments after they made withdraw requests.

43. MILLER also failed to disclose to investors, including B.W. and E.S., that the West Virginia Securities Commission ordered him to cease and desist operating Bear Lute in or around November of 2022.

44. MILLER ceased all communications with investors E.S. and B.W. after they made requests for withdrawal.

**Account Analysis & Seizure Warrants**

89. Investors sent MILLER a total of $339,917.90[2] for the Bear Lute scheme. Law enforcement has identified more than 150 victims.

90. The investor funds were deposited as follows:

| Date Range (on or about) | Payment Processor | Receiving Account(s) | Total Amount |
|---|---|---|---|
| June 30, 2022 to July 14, 2024 | Paypal | 5189, 4869, and 5154 | $168,502.90 |
| May 24, 2023 to September 20, 2024 | Stripe | 5311, 5162 through the **Stripe Account** | $149,415.00 |
| October 13, 2022 | Square[3] | 5311 | $22,000.00 |

91. Despite receiving multiple requests for withdrawals from victims of the Bear Lute scheme, MILLER only ever returned funds to one victim, the amount of which, $416.48, was far less than the total amount that the victim invested.

92. Funds were not used as MILLER promised. Taking a conservative sample from just July 2023 to July 2024, a time when Bear Lute was the primary source of income for MILLER, $34,650.00 was transferred from either 5311 or 5154 to MILLER's personal account, 4869. Likewise, $48,423.01 was transferred from either 5311 or 5154 to DRUMM's personal account, 5189.

---

[2] Note that MILLER repaid one investor $416.48, so the total loss amount associated with Bear Lute is calculated as $339,501.42. *See* paragraph 91.
[3] Square is a business technology company and payment processor owned and managed by Block, Inc., which is headquartered in Oakland, California. MILLER used Square to process a single Bear Lute investment on or about October 13, 2022, from victim W.K.C. totaling $22,000.

15

93. In November of 2024, a seizure warrant was executed on the bank accounts at Fifth Third. (*See In the Matter of the Seizure of Funds Totaling up to $434,501.42 Held in Accounts Ending in 5311, 5189, 5162, 5154, and 4869 at Fifth Third Bancorp*, 2:24-mj-00186).

94. In the same month, a seizure warrant was sworn out in the Western District of Tennessee concerning the **Stripe Account** at Evolve Bank and Trust, an FDIC-insured bank. (*See In the Matter of the Seizure of Funds Totaling up to $434,501.42 Held in Account held at Evolve Bank and Trust associated with Stripe, Inc. token acct_1NB8o3B7IAFrOEQ8*, 24-SW-394). Law enforcement believed at that time that the funds from the **Stripe Account** were being held at Evolve Bank and Trust. However, Evolve Bank and Trust informed law enforcement that it was not in possession of the funds.

95. In December of 2024, the FBI communicated with Stripe through Stripe's legal team. Stripe indicated that it would be able to shut down the **Stripe Account** and would be able to transfer funds in the **Stripe Account** to law enforcement upon receipt of a seizure warrant.

## **STATUTORY BASIS FOR SEIZURE AND FORFEITURE**

96. 18 U.S.C. § 981(b) provides, in relevant part, that any property, real or personal, which represents or is traceable to the gross receipts obtained, directly or indirectly, or any facilitating property involved in violation of 18 U.S.C. § 1343 are subject to civil forfeiture to the United States Government.

97. 21 U.S.C. § 853(e) & (f) by 28 U.S.C. § 2461 provides, in relevant part, that any property, real or personal, involved in or facilitating, or any property traceable to such property involved in a violation of 18 U.S.C. § 1343 shall be forfeited to the United States.

98. 18, U.S.C. § 981(b)(1) authorizes seizure of property subject to civil forfeiture based upon a warrant supported by probable cause. 18, U.S.C. § 981(b)(3) permits the issuance of a seizure warrant by a judicial officer in any district in which a forfeiture action against the property may be filed and may be executed in any district in which the property is found.

99. As set forth above, there is probable cause to believe that the **Stripe Account** is subject to both civil and criminal forfeiture because it was used to commit wire fraud.

17

## **SEIZURE PROCEDURE**

100. Upon execution of the seizure warrant, Stripe shall be directed to restrain and lock the **Stripe Account** pending transfer of all right, title, and interest in the **Stripe Account** to the United States upon completion of forfeiture proceedings to ensure that changes to the **Stripe Account** cannot be made absent court order or, if forfeited to the United States, without prior consultation with the FBI and/or the United States Department of Justice.

## CONCLUSION

102. Based on the information contained in this affidavit, I submit that there is probable cause to believe that the **Stripe Account** is property that has been used, or is intended to be used, to commit or facilitate wire fraud. Accordingly, the Stripe Account is subject to civil forfeiture and criminal forfeiture.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully submitted by:

_____
Aaron M. Lee, Special Agent
Federal Bureau of Investigation

Signed and sworn to by telephone this 24th day of January, 2025.

_____
Dwane L. Tinsley
UNITED STATES MAGISTRATE JUDGE

19